**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2771
_____

UNITED STATES OF AMERICA

v.

JON J. LACKNER
                    Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-09-cr-00813-001)
District Judge: Honorable Petrese B. Tucker
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 30, 2013

Before: JORDAN, VANASKIE, and COWEN, *Circuit Judges*

(Filed: August 14, 2013 )
_____

OPINION
_____

VANASKIE, *Circuit Judge.*

At issue on this appeal is the validity of a search of a laptop computer undertaken

by agents of the Federal Bureau of Investigation pursuant to search warrants issued by

New Jersey and Pennsylvania authorities. The District Court denied Appellant Jon

Lackner's motion to suppress the inculpatory evidence revealed by the search, concluding

that the FBI agents acted within the  scope of the validly-issued warrants and that, in any event, they relied in good faith on the warrants, precluding suppression of evidence as a remedy.  We agree with the District Court's analysis.  Accordingly, we will affirm the District Court's judgment.

I.

We write primarily for the parties, who are familiar with the facts and procedural history of this case.  Accordingly, we set forth only those facts necessary to our analysis.

In the Fall of 2008, Lackner, a resident of Cherry Hill, New Jersey, was the subject of an investigation undertaken by the Police Department of Bensalem, Pennsylvania as a result of internet communications between Lackner and a fictitious fourteen year-old girl named "Jessica."  The internet communications were sexual in nature and graphic, and included a live video transmission of Lackner masturbating while communicating with "Jessica."  When Lackner traveled to Bensalem on March 24, 2009 for the purpose of having sex with "Jessica," he was arrested by Bensalem law enforcement officers.

Using the information gathered by the Bensalem authorities, Cherry Hill, New Jersey police officers procured a warrant to search Lackner's residence.  The affidavit submitted in support of the search warrant application concluded that there was probable cause to believe that computers and other electronic devices, such as cameras and disks, constituted evidence of the crime of Endangering the Welfare of a Child, in violation of N.J. Stat. Ann. § 2C:24-4.  The affidavit explained that the electronic devices would have to be searched by an analyst, and requested permission to turn these items over to

2

Bensalem Police for further search.  The New Jersey warrant explicitly permitted "any officer of any police department having jurisdiction" to search Lackner's residence for computers and other electronic devices for "evidence of the crime of Endangering the Welfare of a Child."  (App. 41).

Execution of the warrant resulted in the seizure of three computers (a Sony laptop, a Toshiba laptop, and a Dell desktop), three web cameras, and two flash drives.  In addition, Lackner's employer, Main Street Dental, gave police a desktop computer used by Lackner.  All of the seized items were turned over to the Bensalem Police, which subsequently turned over the computers and other electronic evidence to the Pennsylvania State Police Computer Crime Lab.

Bensalem Police then applied for a second warrant, seeking permission to search "the items seized from Jon Lackner . . . and Main Street Dental . . . which are currently housed at Bensalem Township Police Headquarters."  (Supp. App. 1.)  The affidavit accompanying the warrant application listed nine electronic devices to be searched.  The computers seized from Lackner's house and the Main Street Dental computer were the last four items listed.  The affidavit sought permission to search the nine devices "for images and/or data that involve the application or documentation of Unlawful Contact with a Minor and Criminal Use of a Communications Facility including but not limited to instant messaging archives, buddy lists, photographs, phone books/logs, text messages, emails, and documents relating to residency and computer ownership."  (Supp. App. 8).  Twice in its concluding paragraph the affidavit listed the nine devices in the same order.

The accompanying warrant issued by a Pennsylvania judicial officer described the "premises or persons" to be searched as the items taken from Lackner's home and Main Street Dental, but the list of items to be searched omitted the last three devices identified in the concluding paragraph of the affidavit, including the Sony laptop. Although only six devices were specifically listed on the section of the warrant specifying the items to be searched, the Pennsylvania State Police examiner proceeded to search all nine devices identified in the affidavit accompanying the warrant application, including the Sony laptop. This initial search indicated that the Sony laptop did not contain evidence relating to "Jessica."

In December of 2009, a federal grand jury in the Eastern District of Pennsylvania returned a five-count indictment, charging Lackner with federal offenses arising out of his interaction with "Jessica." In October of 2010, shortly before trial was scheduled to commence, Lackner's counsel claimed that discovery was incomplete, and requested a mirror image of the Sony laptop's hard drive. The government acceded to this request, but only after the FBI conducted a forensic examination of the laptop.

During this examination, the FBI found a video of a 16 year-old girl exposing herself to Lackner, along with chat logs documenting Lackner's directions to the girl while he watched and recorded her on his computer. In light of this development, a federal grand jury returned a superseding indictment that added one count charging Lackner with using a minor to produce visual depictions of sexually explicit conduct, in violation of 18 U.S.C. § 2251(a), and one count charging Lackner with possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4).

4

Before trial on the superseding indictment began, Lackner moved to suppress the evidence found on the Sony laptop. The District Court denied the Motion to Suppress on three grounds: (1) the search was authorized under the terms of the New Jersey warrant; (2) the search was valid under the Pennsylvania warrant because the Sony laptop had been omitted from the list of items to be searched as the result of a "clerical error," and (3) the FBI had acted in good faith in believing that the Pennsylvania warrant authorized the search of the Sony laptop. After the motion to suppress was denied, Lackner successfully moved to sever the two additional counts of the superseding indictment and proceeded to trial on the original five counts. After a seven day jury trial, Lackner was convicted on all five counts.

Lackner subsequently pled guilty to the two counts added by the superseding indictment. As part of the plea agreement, the parties stipulated that Lackner would retain his right to appeal the District Court's decision on the Motion to Suppress.

The District Court sentenced Lackner to 120 months' imprisonment on counts one through five, and seven, and 180 months on count six, which charged Lackner with the use of a minor to produce visual depictions of sexually explicit conduct. All sentences were to be served concurrently. The District Court also imposed a five-year term of supervised release, a fine of $1,500, and a special assessment of $700. Lackner filed this timely appeal, limited to the District Court's denial of his Motion to Suppress the evidence seized from the Sony laptop.

II.

5

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291.  We review a district court's ruling on a motion to suppress "for clear error as to the underlying factual findings," but "exercise[] plenary review of the application of the law to those facts."  *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).  We must sustain the District Court's ruling if the search was authorized by either the New Jersey or the Pennsylvania warrant.  Even if neither warrant authorized the search of the Sony laptop, we must uphold the denial of the suppression motion if the FBI agents relied in good faith on the existence of an otherwise invalid warrant.

## A.  The New Jersey Search Warrant

Lackner does not contend that the New Jersey warrant was infirm, that the search of his residence was unconstitutional, or that the seizure of the Sony laptop was inappropriate.  Instead, Lackner's argument is confined to the legality of the search of the laptop's contents.

Lackner first asserts that the New Jersey warrant's explicit authorization for the search to be conducted by "any officer of any police department having jurisdiction" should be understood as limited to only those law enforcement officers "having jurisdiction to *execute this warrant*."  (Lackner Reply brief at 1.)  Lackner elaborates that only a law enforcement officer "having adequate territorial or exceptional jurisdiction to execute" the warrant, (*id.* at 3), was authorized to conduct a search under the New Jersey warrant.  Lackner, however, does not cite any authority for the proposition that he has standing to challenge *who* has the authority to execute a validly-issued warrant.  In this

6

regard, it is not unusual for local law enforcement personnel to rely upon the expertise of federal forensic examiners to undertake the highly technical examination of electronic media. *See, e.g., United States v. Williams*, 592 F.3d 511, 522 (4th Cir. 2010) (upholding under plain view doctrine FBI search of computer pursuant to a state court warrant issued to state law enforcement personnel). Indeed, the warrant in this case contemplated that the Cherry Hill police officers would deliver the seized items to law enforcement officers outside their territorial jurisdiction.

Lackner argues, however, that the New Jersey warrant authorized only the seizure of the Sony laptop and other electronic media, not a search of their contents. This argument is specious. The warrant allowed for a search of Lackner's residence for evidence of "the crime of Endangering the Welfare of a Child, in violation of N.J.S.A. 2C:24-4." (App. 43.) Only by examining the contents of electronic media could it be ascertained that evidence of such criminal activity existed. In this respect, the affidavit accompanying the search warrant application attested to the needs of an analyst to conduct a proper examination of the contents of the electronic media. Thus, the New Jersey warrant plainly contemplated a search of the digital evidence.

Finally, contrary to Lackner's assertion that the New Jersey warrant at best allowed for searching for evidence of Lackner's contacts with "Jessica," the warrant extended to evidence "relevant to any prosecution of the designated offense," *Williams,* 592 F.3d at 520, *i.e.,*"Endangering the Welfare of a Child." The fact that the evidence found on the Sony laptop depicted a second potential minor does not invalidate the seizure or the search.

7

In summary, the FBI agents were authorized to participate in the search, the search was properly confined to the limits of the search warrant, and the search warrant did not restrict the search to evidence involving "Jessica." Therefore, the District Court did not err in denying the motion to suppress on the basis of the New Jersey warrant.

**B. The Pennsylvania Search Warrant**

Although the Sony laptop was not included in the section of the Pennsylvania warrant listing the specific items to be searched, the District Court concluded that the search of its contents was valid because its omission from that list was an obvious clerical error. We discern no error in the District Court's conclusion.

In *Doe v. Groody*, 361 F.3d 232, 240 (3d Cir. 2004), we recognized that an ambiguity in the warrant or an evident clerical error in the warrant can be resolved by reference to the supporting affidavit, even where, as here, the affidavit has not been incorporated into the warrant. We explained that "[i]n these situations, it is clear that the requesting officers and the magistrate agreed on the place to be searched or items to be seized, but there is an obvious ministerial error in misidentifying or ambiguously identifying the place or item." *Id.* This is such a case.

The section of the warrant captioned, "SPECIFIC DESCRIPTION OF PREMISES AND/OR PERSON TO BE SEARCHED," states: "Item[s] seized from Jon Lackner, 801 Cooper Landing Road, Apartment B604, Cherry Hill, NJ 08033 and Main Street Dental, 2581 E. Chestnut Avenue, Vineland, NJ 08361 which are currently being housed at Bensalem Police Headquarters." (Supp. App. 1.) The Sony laptop, of course, was one of those items. But, the section of the warrant captioned "IDENTIFY ITEMS

8

TO BE SEARCH FOR AND SEIZED," listed only six of the nine devices that were being held at Bensalem Police Headquarters. There is thus an obvious ambiguity on the face of the warrant itself: on the one hand, the warrant indicates that only six electronic devices are to be searched, but on the other hand, it indicates that all electronic devices in the possession of the Bensalem Police Department are to be examined.

This ambiguity is resolved and the existence of a clerical error is revealed by reference to the affidavit submitted in support of the search warrant application. The three omitted items, including the Sony laptop, are the last items in the affidavit's detailed description of the items sought to be searched. The concluding paragraph of the affidavit twice lists the devices to be searched in the same order, with the Sony laptop being the seventh device identified. The warrant repeats *in haec verba* only the first six items in the exact same order as set forth in the affidavit. It is perfectly plain that the law enforcement officers sought permission to search all nine items, and that the issuing judicial authority had a plain understanding of what items were to be searched. "Reliance on the affidavit in these circumstances neither broadens nor shrinks the scope of the warrant, but merely rectifies a '[m]inor irregularit[y].'" *Doe*, 361 F.3d at 240 (citation omitted). Accordingly, we agree with the District Court that the Pennsylvania warrant authorized the search of the Sony laptop.

## C. The Good Faith Determination

The District Court also concluded that, even if the search of the Sony laptop was not authorized by either the New Jersey or the Pennsylvania warrants, suppression of the

9

evidence derived from the search was not required because the FBI had acted in good faith. We agree.

The Fourth Amendment does not bar the use of evidence "obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate." *United States v. Leon*, 468 U.S. 897, 900 (1984). Stated otherwise, suppression of evidence is "inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority." *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2011) (internal quotation marks omitted). In determining whether the evidence should be excluded, the court must consider "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate judge's authorization." *Id.* at 307 (internal quotation marks omitted).

The District Court's determination that the search was authorized under both the New Jersey and the Pennsylvania warrants supports the conclusion that the search in this case was undertaken in objectively reasonable reliance on the authority of the warrants. Indeed, the existence of a warrant typically suffices to supplant the need for a "deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Leon*, 468 U.S. at 922 (citation omitted) (internal quotation marks omitted). Buttressing the conclusion that the federal agents acted in reasonable reliance upon the authority of the warrant is the fact that Pennsylvania law enforcement officers also inspected the Sony laptop.

Lackner argues that the search could not have been conducted in good faith because the laptop was in the possession of law enforcement for two years prior to the federal search being conducted, and therefore the age of the warrants alone made reliance unreasonable. This argument is meritless. Items lawfully seized may be searched anew as long as the item remains in the legitimate, uninterrupted possession of the police. *See United States v. Burnette*, 698 F.2d 1038, 1049 (9th Cir. 1983). Lackner presents no evidence that the police possession became unlawful during the two-year period, or that possession was interrupted at any point.

Lackner has thus failed to establish that the District Court erred in concluding that, even if the New Jersey or Pennsylvania warrants were fatally flawed, suppression of the evidence was appropriate. Accordingly Lackner's motion to suppress was properly denied.

## III.

For the foregoing reasons, we will affirm the District Court's judgment.